FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

2021 NOV -1 PM 1:05

JEFFREY P. COLWELL
CLERK

Civil Action No. _____ BY_____DEP. CLK

(To be supplied by the court)

_____*CARMEN CRINER*_____, Plaintiff

v.

*CRP-GREP OVERTURE 9CO OWNER, LLC.,*
*GREYSTAR REAL ESTATE PARTNERS, LLC,*
*BOB FAITH, individual,*_____,
*JESSICA DOUGLASS, individual,*
*EMILY GLANDER, individual,*_____,

*RESIDENT VERIFY, LLC*
_____,

*ENTRATA, INC.*
_____, Defendant(s).

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

---

**COMPLAINT**

---

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.   PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

CARMEN CRINER , 2355 MERCANTILE ST., APT. 1412, CASTLE ROCK, CO 80109
(Name and complete mailing address)

720-481-4566   MARQCRINER1964@gmail.com
(Telephone number and e-mail address)

## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

CRP-GREP OVERTURE 9CO OWNER, L.L.C.

Defendant 1:   750 BERING DRIVE, Suite 200, Houston, TX 77057
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

GREYSTAR REAL ESTATE PARTNERS, LLC

Defendant 2:   5445 DTC PARKWAY PENTHOUSE 1, GREENWOOD Village, CO 80111
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

JESSICA DOUGLASS - OVERTURE 9th + CO

Defendant 3:   4205 E. 10TH AVE, DENVER, CO 80206
(Name and complete mailing address)

303-552-3573
(Telephone number and e-mail address if known)

EMILY GLANDER - OVERTURE 9th + CO

Defendant 4:   4205 E. 10TH AVE, DENVER, CO 80206
(Name and complete mailing address)

303-552-3573
(Telephone number and e-mail address if known)

*CONT.*

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1: BOB FAITH - GREYSTAR
465 MEETING STREET, SUITE 500, CHARLESTON, SC 29403
(Name and complete mailing address)

843-579-9400
(Telephone number and e-mail address if known)

Defendant 2: RESIDENT VERIFY, LLC
4205 CHAPEL RIDGE ROAD, LEHI, UT 84043
(Name and complete mailing address)

877-826-9700
(Telephone number and e-mail address if known)

Defendant 3: ENTRATA, INC.
4205 CHAPEL RIDGE ROAD, LEHI, UT 84043
(Name and complete mailing address)

877-826-9700
(Telephone number and e-mail address if known)

Defendant 4: _____
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

## C.   JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

☒   Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

42 U.S.C. § 3604(a), 42 U.S.C. § 3604(b), 15 U.S.C. § 1681s-2B,

42 U.S.C. § 1981

☐   Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of _____.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of _____ (name of state or foreign nation).

Defendant 1 has its principal place of business in _____ (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: _____

   Supporting facts:

   PLEASE SEE ATTACHED
       D. STATEMENT OF CLAIMS

CLAIM TWO: _____

    Supporting facts:

**E.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

PLEASE SEE ATTACHED
D. STATEMENT OF CLAIMS

**F.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Carmen Cruser*
(Plaintiff's signature)

*11/1/2021*
(Date)

(Revised December 2017)

6

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No._____

CARMEN M. CRINER

                  Plaintiff,

vs.

CRP-GREP OVERTURE 9CO OWNER, L.L.C., company
GREYSTAR REAL ESTATE PARTNERS, LLC, company
JESSICA DOUGLASS, individual,
EMILY GLANDER, individual,
BOB FAITH, individual
RESIDENT VERIFY, LLC, company
ENTRATA, INC., corporation

                  Defendants.

---

## COMPLAINT AND REQUEST FOR INJUNCTION AND OTHER RELIEF

---

### JURISDICTION

Plaintiff CARMEN CRINER ("Plaintiff", "I", or "Me") is asserting claims for a Federal question pursuant to 28 U.S.C. § 1331, claims arising under the Fair Housing Act, 42 U.S.C. § 3604 et seq., Race Discrimination and Disparate Treatment, 42 U.S.C. § 1981, Injunction, also pendant jurisdiction of the state law claims. Defendants CRP-GREP Overture 9CO Owner, L.L.C. (collectively "Overture"), Greystar Real Estate Partners, LLC, ("Greystar" or collectively "Overture"), Jessica Douglass ("Ms. Douglass" or collectively "Overture") Emily Glander ("Ms. Glander" or collectively "Overture"), Bob Faith, committed discriminatory housing practices against Plaintiff, on the basis of her race (African American) or color (Black), and other protected activity.

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

Plaintiff CARMEN CRINER ("Plaintiff", "I", or "Me") is also asserting claims for a Federal question

pursuant to 28 U.S.C. § 1331, claims arising under the Fair Credit Reporting Act 15 U.S.C. § 1681,

Injunction, against Resident Verify, LLC and Entrata, Inc., also pendant jurisdiction of the state law

claims. I am joining Resident Verify, LLC, and Entrata, Inc. in my civil action because they are an affected,

interested party. The corporation is contracted though Overture to manage their applications and

process tenant screening. Resident Verify, LLC ("Resident Verify") and Entrata, Inc. ("Entrata"), engaged

in fraudulent acts when they unlawfully released private telephone recordings to a third-party

("Overture"), without my knowledge and consent. The confidential information and telephone

recordings were used to discredit me. Resident Verify, LLC ("Resident Verify") and Entrata, Inc.

("Entrata"), also colluded with ("Overture") and refused to correct the falsified information willfully

placed by ("Overture") on my rental application that was brought to their attention by me, causing my

application to be wrongfully denied.


### THE PARTIES

CRP-GREP Overture 9CO Owner, L.L.C. (collectively "Overture"), Jessica Douglass ("Ms. Douglass" or

collectively "Overture"), Property Manager for Overture 9th+ CO, Emily Glander ("Ms. Glander" or

collectively "Overture"), Assistant Property Manager for Overture 9th+ CO, Greystar Real Estate

Partners, LLC, ("Greystar"), Bob Faith, CEO & Chairman, Greystar Real Estate Partners, LLC ("Greystar").

Resident Verify, LLC, ("Resident Verify") a tenant screening company for Overture, Entrata Inc.

("Entrata") a parent company or owner of Resident Verify, LLC ("Resident Verify").


### FACTUAL ALLEGATIONS

1.      I, Carmen Criner, have been renting apartment homes for several years. I have never had an
eviction or criminal record. I have always paid my rent on time. I follow the rules and have a history of
being a good tenant with no lease violations. I have a good rental reference history that dates years
back.

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

2.      I have worked in corporate office for many years throughout my entire career. I was
Communications Specialist in a real estate company, a Legal Receptionist for 500 attorneys, and an
Office Manager. Unfortunately, I developed a chronic neurological disorder, cervical and lumbar spine
disease, and musculoskeletal disorders all leading to disability illnesses in 2015. I was deemed disabled
by the Social Security Administration in 2017. I have a discharged bankruptcy from 2015 due to breast
cancer treatments and medical debt. The accounts listed on my credit report show as derogatory and
delinquent due to being included in a discharged bankruptcy. The accounts are from past creditors who
have previously agreed to charge off balances or close accounts. Any information pertaining to my credit
report including an adverse action letter that is attached (this is a notification of a public record, i.e.
bankruptcy) does not affect the renting requirements or qualifications for approval at apartment
communities.

3.      Like any other individual in Colorado, I sought a permanent home that met my needs. For me,
my ideal home is living in a 55+ community with affordable rent, or at least reasonably priced rent, clean
and comfortable with a smoke-free environment, and most importantly, where the housing rules are
strictly enforced. I also desired to live in a neighborhood where almost everything is easily accessible. In
June 2020, I found an apartment community advertised as brand new, and available for pre-leasing. The
advertised apartment met all my needs – a one-bedroom apartment home located at Overture 9th + CO,
4205 E. 10th Avenue, Denver, CO 80220, in the highly anticipated redevelopment area of Denver.

4.      In May 2021, I filed a Complaint with the Civil Rights Division ("CCRD"). I received a no probable
cause finding in September 2021, due to insufficient basis. *See Attachment 1.* The determination from
CCRD was not an impartial assessment or investigation of the facts. Though, with the investigation from
CCRD I was able to obtain additional information and evidence in which to file my lawsuit in district
court.

5.      In March of 2020, I met Emily Glander, Assistant Property Manager of Overture. I told Ms.
Glander I was extremely interested in leasing an apartment home. I informed Ms. Glander that I had an
on ongoing fair housing lawsuit at that time, and there was also a counterclaim filed against me. I also
informed Ms. Glander there was a negative reporting that was placed on (the back end) of my credit
report by the litigants involved. I told her this affected my ability to rent at that time and placed me in
homelessness to where I had to live in my car and a hotel. I told her I would have a letter showing the
negative reporting would be removed. I also told Ms. Glander there was a past discharged bankruptcy
on my credit report and my score was 536. I asked Ms. Glander if I would qualify based on Overture's
rental criteria. Ms. Glander said they have seen applicants approved on a credit score of 500. Ms.
Glander also said that I would qualify as long as I did not have an eviction or owe money to the previous

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

property owner. I told Ms. Glander that I did not have an eviction or owe money to my previous
property owner.

6.      During that initial meeting, Ms. Glander told me that Overture will need my bankruptcy
discharge paperwork from 2015, and a copy of a letter showing the negative reporting would be
removed and showing I did not owe money to the former housing provider. I told Ms. Glander I am
expecting to receive that as part of a settlement. I wanted to be transparent about what was going on in
my life since it was public record.

7.      That same day, Ms. Glander told me she believed I would have to wait until my lawsuit was
resolved before I could apply. Ms. Glander said she would confirm this information with Jessica
Douglass, Property Manager. A few days later, Ms. Glander and I spoke again on the telephone, and she
told me she confirmed with Ms. Douglass that I would need to wait until my lawsuit was resolved before
I applied. I did not think about the comment being discriminatory.

8.      I honestly did not think anything was wrong with the statement of having to wait for my
litigation to end before applying. All I was focused on was hoping it would end soon so I could have the
documents Overture needed to apply. Upon information and belief, Ms. Glander and Ms. Douglass
realized what they had said was unlawful. This is when they started to try and change what they said.
Ms. Douglass wrote in her record log, to the extent, that I asked too many questions and she should
assist me instead of Ms. Glander talking to me.

9.      In March of 2020, I met Ms. Douglass and set an appointment to tour said property with her.
During our tour, I explained my situation to her as I told Ms. Glander. When I shared with Ms. Douglass
that my credit score was 536, I asked her if that meets Overture's rental criteria. Ms. Douglass said yes
because they have seen applicants approved on a 500-credit score. Ms. Douglass wrote in her position
statement to CCRD that when she made the comment about the 500-credit score, she was speaking of a
different property. But in the Director's Letter of Determination, it read that "Ms. Douglass never told
Ms. Criner applicants were approved on a credit score of 500."

10.     Ms. Douglass told me I would first need to apply, but she and Ms. Glander said I needed these
documents for approval: (a) $1000 holding deposit (b) written documentation of a positive rental
reference letter stating I did not owe money to the property owner (c) documentation stating the
landlord's negative credit reporting will be removed. Ms. Douglass and Ms. Glander both told me this
because they needed to know that I did not owe money to the housing provider who filed a
counterclaim against me. Ms. Douglass also said I could submit my documents to Resident Verify. Parts
of this conversation was omitted from Overture's record logs they submitted to CCRD.

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

11.     Ms. Douglass and Ms. Glander both told me about the income requirements and that I must meet one times (1x) the monthly rent to qualify. My income met the monthly requirements. Ms. Douglass told CCRD that Overture's income requirement for approval is between one and five times (1 and 5x) the monthly rent. Ms. Douglass placed me in a higher income bracket to persuade CCRD to believe I did not qualify financially.

12.     On June 26, 2020, I applied for an apartment home at Overture. I was qualified to rent the apartment and met the minimum requirements as outlined in Overture's Resident Qualifications Requirements. Ms. Douglass, Property Manager at Overture, altered by rental application by screening me for a more expensive apartment than what I applied for, and she did this without my knowledge or consent. I was denied housing. Overture continued to search for similarly qualified applicants. Overture's reasons for my denial was an adverse action letter. This adverse action letter is produced each time a credit reporting agency runs my credit for an apartment. The letter shows my past discharged bankruptcy (because it is public record) and the derogatory accounts, but it does not show the discharged date. I told Ms. Glander and Ms. Douglass about this matter when we first met. Ms. Douglass told CCRD I said my credit score would be improved after my lawsuit, at that time, was resolved. I never told Ms. Douglass that my credit score would be improved when the negative reporting was removed. A bankruptcy stays on a credit report for 7-10 years. I do not have credit cards, by choice, or owned assets that would increase my score. This does not make me a bad person who does not pay my bills, and it does not affect the rental criteria at other luxury apartment communities. It certainly does not give Overture the right to alter my rental application without my consent, and then blame my credit for the denial.

13.     If Ms. Douglass had screened me truthfully and not altered my application, the screening process would have rendered an "approval with conditions" meaning, required an additional security deposit. On my application, I also selected a two-year rental lease term. Ms. Douglass knew or should have known if I did not qualify for the longer two-year lease term, she had the authority in her position to inform me that I could be screened on a one-year rental lease term for qualifying. Every property manager has a duty to inform an applicant that they will qualify for a one-year shorter lease term. If an applicant consents to this shorter lease term it is not a violation of the Fair Housing Act ("FHA"). According to Overture's company policy Ms. Douglass could have performed this action. Ms. Douglass and Overture did not want me as a resident because of my race and the racial stereotypes pertaining to credit.

14.     I telephoned Ms. Douglass and Ms. Glander several times on June 26, 2020, to see if there was anything I could do to clear up any adverse action so that I could be approved. I am not sure if Ms.

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

Douglass understood that the negative reporting from the past litigants was hidden on the back end of my credit report and it did not show on the front end where it could be seen. It was determined during my past lawsuit that those litigants did place the negative reporting on the back end so that a housing provider would automatically deny me. I was worried and expressed my worrisome to Ms. Douglass and Ms. Glander. In this case, once they ran my credit report and the adverse action letter showed my bankruptcy and the derogatory accounts, Ms. Douglass assumed I had nothing to dispute. I wanted to dispute the denial. Ms. Douglass would not accept any documentation they said they needed to see. Ms. Douglass directed me to call Resident Verify.

15.      I contacted Resident Verify by telephone on June 26, 2020, regarding my rental application being denied and asked if I could submit documentation. The representative from Resident Verify informed me they do not accept documentation. The representative then told me my rental application was screened on a $2065 monthly rent. I asked Resident Verify to correct the rental amount that was showing on the report because it was not what I applied for. The representative refused, saying it did not matter, and told me the property manager had to make the change. The representative at Resident Verify also told me, to the extent, that I could be approved and rent somewhere else but not at Overture. I asked the representative questions about my credit report and denial because I did not understand why Overture did not approve my application with conditions as written in their guidelines. I ask the representative if he could override my application (because I remembered Ms. Douglass and Ms. Glander told me they could get an override if there was a problem with the denial). The representative said there were delinquent accounts and bankruptcy. As I stated, the bankruptcy does not have a date on it, and I was honest with Ms. Douglass about this derogatory information. I shared a lot with her when we first met in Overture's showroom. Ms. Douglass formed a lot of assumptions and place racial stereotypes on me. This made CCRD doubt everything I asserted.

16.      It was unfair for Resident Verify to not assure the accuracy of their tenant screening process. Resident Verify had a legal duty to assure accuracy and could have disputed the inaccuracy so the screening process would have been fair and equitable. Instead, both Overture and Resident Verify colluded with each other and denied me housing in violation of the Fair housing Act and the Fair Credit Reporting Act.

17.      During the CCRD administrative proceeding, I found out that Overture unlawfully obtained recorded conversations I had with Resident Verify. Overture used these recordings to defame and discredit me. This was a wrongful intrusion into my private conversations with Resident Verify, and I was not only outraged but confused about the extent of unfair treatment. This was an invasion to my confidential information when Resident Verify unlawfully released these recordings of me asking

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

questions about the screening process and why I was denied. My reputation, dignity and respect were lost in an instant with a simple act of retribution or malice by someone seeking to cause harm. Any sensible person would have been upset.

18.     I called Resident Verify in or about August 2021. I spoke to a supervisor name Ryan (who would not give me his last name). I asked Ryan how private telephone information about me was released to a third party. Ryan told me that it is not a business practice for Resident Verify to release private telephone conversations to anyone, (including Overture or CCRD). Ryan stated he did not know how the conversations were obtained and released. Upon information and belief, Resident Verify colluded with Overture and illegally released personal and private telephone conversations I had about my credit report. This was planned, calculated, and conducted by both parties to make sure I would be denied a housing opportunity. The telephone recordings were given to CCRD by Overture, and they maliciously set out to defame my character and discredit me so Overture would receive a no probable cause finding. Resident Verify's conduct was not only unethical, but it is unlawful. I have been harmed, shamed, hurt, and embarrassed by this deceptive business practice. It was wrong and it was sorely unfair. I did not deserve to be treated so poorly by a housing provider and a screening company who all claim they follow the consumer laws and the fair housing act. My rights to confidential information were destroyed by All Defendants when Overture colluded with Resident Verify in obtaining my confidential information, to destroy my credibility.

19.     As mentioned above, I told Ms. Glander and Ms. Douglass about my credit report. According to Overture's guidelines a criminal record is an automatic denial. Ms. Douglass and Ms. Glander both told me an eviction is an automatic denial, which no such records exist against me. I realized I was fighting an uphill battle and that Overture just did not want me as a tenant because of my race and not my credit.

20.     Ms. Douglass documented a partially true note in Overture's record log dated June 26, 2020, that reads: *"Carmen Criner called and asked to change the way we ran her credit report. I let her know that we screen off of market rent so that residents are qualified for rental increases."*

21.     I asked Ms. Douglass to correct the rent inaccuracy she was responsible for, and she refused. Ms. Douglass made the application process unfair and unjust.

22.     Ms. Douglass knew or should have known a two-year lease term that I selected may under qualify me. As a property manager, it is acceptable to offer a shorter rental lease term to an applicant. Because of Ms. Douglass increasing the rent to a higher amount on my application, these actions combined, are what created an inaccurate screening in their complex computer algorithm. Ms. Douglass said it did not matter because the screening system looks at a lot of different things. Upon information

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

and belief, if secretly changing my application did not matter, Ms. Douglass would not have committed this fraudulent act.

23.      Ms. Douglass used the adverse action letter attached to my credit report as the reason for my denial. As mentioned above, the adverse action letter has always approved me "with conditions" and, at luxury apartment communities that are comparable to Overture. The excuses Overture made for my denial are pretext and a coverup that occurred under circumstances giving rise to an inference of discrimination based on my race, color, and protected activity.

24.      Ms. Douglass told CCRD in her affidavit that she made a mistake in entering the wrong rental amount for screening my application. If this statement were true Ms. Douglass would have corrected the error when I asked her to and screened me on a fair and just basis. Ms. Douglass also told CCRD that I asked a lot of questions about "how I can get approved." Asking questions about the screening process is not a crime and does not give Overture the right to fraudulently change my application and the screening process.

25.      According to Overture's written Customer Service Impact statement, *"The application process should be a positive and efficient experience for all applicants."* It also gives Ms. Douglass the power to have disputed my denied application through Resident Verify, LLC and Entrata, Inc. by submitting a help desk ticket. Upon information and belief, Ms. Douglass did not do this because she would have had to admit to Resident Verify that she altered my application. The application screening process was not fair and equitable. I did not receive a fair tenant screening by Overture and Resident Verify.

26.      Upon information and belief, when I first told Ms. Glander and Ms. Douglass, I filed a lawsuit against a former housing provider, and a negative reporting by them made me homeless for several months at that time. Overture was judgmental towards me because of my protected activity.

27.      Ms. Douglass planted the notion to CCRD that I said I was evicted. In the Director's Letter of Determination there were statements made by CCRD about the possibility of me having an eviction record. The nationwide background check Overture performed on me was sufficient to show no eviction and/or criminal records existed. Ms. Douglass made these racially stereotypical remarks about me, to frame evidence and dissuade CCRD.

28.      Overture and Greystar used false reasons to hide their discriminatory conduct when they wrongfully denied my application. My application would have been approved if Ms. Douglass were fair. The reasons for the denial were not a legitimate nondiscriminatory reason for denying my application. The reasons given were a pretext and were an inference of intentional discrimination.

29.      Overture and Greystar are engaging in deceptive business practices. Ms. Douglass only admitted to me that she changed my application after I found out and called her to ask why she would do that.

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

30.     Overture and Greystar are also falsely advertising and misrepresenting the rental amount for their apartments listed on their websites, by changing the rental amount after I submitted my online application.

31.     In the Director's Letter of Determination, it was stated that Ms. Douglass told CCRD that she made a mistake when she entered the rent amount on my application. As mentioned above, when I asked Ms. Douglass to correct the inaccuracy, she refused to do so. An important question would now be, how many other (minority) applicants has she done this to.

32.     On June 26, 2020, I also wrote a letter to Ms. Douglass, expressing the unfair treatment I received, and it briefly explained all that is mentioned herein. In addition, I sent a copy to Bob Faith, Founder, Chairman and CEO of Greystar. I did not receive a courtesy type of customer service response from the corporate office. *See Attachment 2.*

33.     It was disheartening to me that I was treated unfairly, misled by Ms. Glander and Ms. Douglass by the conduct described herein. I missed a Denver apartment community that I had high interests in becoming a resident. Overture was my number one choice.

34.     Because of Overture and Greystar's unfair, disparate treatment, disparate impact, and discriminatory effect, I had to extend my stay in a hotel until I could find someplace else to live that was comparable to Overture. I could not find any other place I wanted to call home, so I was forced to relocate out-of-state back to Oregon in an area where I used to live many years ago. I had to endure multiple moves that were not by my choice, and I did not have the stability I knew I would have had at Overture 9th + CO.

35.     On May 1, 2021, I successfully applied again for an apartment home at Overture that was listed as available on the 6th floor and renting for $1278. Ms. Douglass committed fraud again and altered my application by increasing the rent to $1420. I was approved with conditions, requiring an additional security deposit. I concur, this same approval should have occurred on June 26, 2020. When I applied again on May 1, 2021, the same adverse action letter showing the derogatory remarks as described above was generated. The only difference was my credit score improved from 536 to 566. Ms. Douglass told CCRD this is why I was approved. Ms. Douglass' statement is false. Ms. Douglass knew or should have known the reason I was approved on May 1, 2021, is because I applied selecting only a one-year lease term.

36.     The apartment I applied for in June 2020 was $1481 monthly rent and I selected a two-year lease term. Because of Ms. Douglass, Overture, Greystar, Resident Verify and Entrata discriminatory and

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

deceptive screening practices, involving increasing the rental amount to $2065, this placed me in a less favorable computer algorithm system, and it denied my application. Ms. Douglass told CCRD that I was approved because my credit score increased from 536 to 566. This is false. Ms. Douglass could have but did not offer a shorter lease term (one-year, instead of a two-year), which would have automatically approved me with an additional deposit. The screening information is provided to her before the screening process is complete. Ms. Douglass willfully made sure my application would be denied in June 2020. I concur, the adverse action letter generated on June 26, 2020, was not the reason for my denial. I have supporting documentation to support my claims.

37.     Ms. Douglass, Ms. Glander, Overture and Greystar, all had racially motivated and stereotypical reasons for denying my application. Essentially, they used Resident Verify's screening system, provided false rent information, and colluded with Resident Verify to conduct the process of an automatic denial. All Defendants have not only ruined my chances for what I believed to be permanent housing for me; because of their unfair screening process, they together destroyed my credibility with the Civil Rights Division.

38.     I received an email from Ms. Douglass on May 1, 2021, stating the apartment was unavailable because someone else rented it the day before. I was never told by Overture I would be applying in a pool with multiple applicants. This is dishonest for Overture to not disclose this pertinent information. The policy or practice has a discriminatory effect on approving people of color. Ms. Douglass and Ms. Glander verbally told me that the required $1000 deposit secures the unit removing it off the market so no other applicants can apply (in which I asked this question in March 2020, and this was their answer. They even told the attorney who was helping me at that time.

39.     I asked Ms. Douglass if I could have the apartment on the 7th floor that was listed at the same rent of $1278. Ms. Douglass emailed me and said there were no other units listed at the lower monthly rent but said there were other apartments listed at $1420 on the 7th floor. Ms. Douglass made offers to me for apartments shown as advertised on the 7th floor that were a higher monthly rent. I declined because there seemed to be false advertising for the availability of apartments at Overture. My suspicion was correct when I read Ms. Douglass' position statement telling CCRD that no apartments were available for me to rent at all on the 7th floor. In the Director's Letter of Determination, it was noted that Ms. Douglass said no apartments were available for me to rent on the 7th floor. I told Ms. Douglass to cancel my application because it was my belief Overture and Greystar are discriminating, and "picking and choosing" who they want as residents. Instead of abiding by a fair application process.

40.     I was not told at any time there would be multiple applicants for the same apartment, or the application process is on a first-come first-serve basis. With having to submit a $1000 deposit, its

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

reasonable to ask if this secures the apartment so no one else can apply. I was told the deposit would

secure the apartment so no one else could apply. Upon information and belief, it seems discriminatory

and dishonest to not disclose this information

41.     Ms. Douglass told CCRD the apartment I applied for had rented the day before by a woman

named Diana Tinsley who moved in on May 6, 2021. They said she is African American and may have

been disabled because she was receiving social security disability.

42.     In June 2021, on Overture's website, I noticed the apartment I had applied for on the 6th floor,

on May 1, 2021, was available again on Overture's website. I also noticed there were 20 apartments

advertised as available on the 7th floor. I took screenshots pictures of the listings. I told the investigator

who was overseeing my case about this advertisement of the available apartments that Ms. Douglass

told CCRD were not available. The investigator asked Ms. Douglass' counsel why the apartment was

showing available.

43.     Ms. Douglass said Diana Tinsley moved out because she complained and reported employees

smoking "meth." Counsel for Ms. Douglass told CCRD they believed Diana Tinsley had a mental problem.

Upon information and belief, Diana Tinsley's medical condition should have been kept private and it was

not proper for Overture to label her as having a "mental problem" for reporting an incident (even if it

were true).

44.     The discriminatory treatment, unfair and deceptive conduct I encountered with Overture is a

main factor for my emotional sadness and mental anguish. Overture and Greystar denied my right to

housing because of my race, color, and protected activity. Ms. Douglass formed a racial and

stereotypical assumption that I could not afford to live at Overture "forever", and this was revealed to

me when she made the comment to me "we want our residents to stay here forever," and she said this

after she was made aware of the amount of my settlement money. Also stating (after she altered my

application) that "we screen our applicants on future rent to make sure they qualify at lease renewal."

Because of this unfair, disparate treatment, disparate impact, and discriminatory effect, I had to extend

my stay in a hotel until I could find someplace else to live that was comparable to Overture. I had to

move two times since the apartment home I successfully applied for and genuinely wanted for a

permanent residence was unavailable to me because of Overture's discriminatory housing practices.

45.     Upon information and belief, most of Overture's residents are being selected from wealthy and

prominent neighborhoods. Overture has had rental rates as low as $1278, (which could be considered

"affordable" in Denver). Yet their occupancy rate has remained at 33% since December 2019, according

to Ms. Douglass' position statement to CCRD. This low occupancy percentage rate also promotes

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

homelessness. If an apartment home is publicly advertised at a certain amount of rent and the property manager (Ms. Douglass) intentionally increases the rent without the applicant's knowledge or consent, this discriminatory effect can negatively impact a particular group of individuals, especially people of color. *"When housing providers deny or make housing unavailable to persons on the basis of characteristics not protected by the Fair Housing Act and when these characteristics are correlated with race, the result is disparate impact discrimination."*

46.     According to written content published in the Denver Post on October 16, 2020, by a sponsored writer, many of Overture's "early move-ins have come from people moving out of Hilltop, Cherry Creek, Crestmoor, and other nearby areas, getting top dollar for their homes now, (says Jan Peterson, Sales Manager of Overture.) According to the 2019 U.S. Census Bureau, Cherry Creek's demographics on race is:  82.1% White alone, percent - 1.8% Black or African American alone, percent – 7.9% Hispanic or Latino, percent…"

47.    Overture and its agents appear to be promoting segregation by engaging in deceptive business practices and discriminatory effects as described above.

## CAUSES OF ACTION

### CLAIM ONE
### 42 U.S.C. § 3604(a)
### (Plaintiff Against collectively "Overture and Greystar")

48.    Plaintiff hereby incorporates all of the paragraphs of this Complaint as if stated, fully, herein.

49.    Pursuant to 42 U.S.C. § 3604(a), the Federal Fair Housing Act ("FHA") prohibits a person from refusing to rent, refusing to negotiate for the rental of, or otherwise make unavailable, or deny a dwelling to any person "because of…race, color."

50.    I am an "aggrieved" person as defined in 42 U.S.C. § 3602(i).

51.    I am a member of a racial minority. I am African American/Black citizen of the United States.

52.    Overture and Greystar's actions described above were taken intentionally, willfully, and constituted a discriminatory housing practice, as defined in 42 U.S.C. § 3602(f).

53.    Overture and Greystar refused to rent, refused to negotiate for the rental of, and otherwise made unavailable or denied, a dwelling to me because of my race including racial and stereotypes such as financial barriers, and the homelessness I was experiencing when I first applied.

54.     Overture and Greystar also refused to rent, refused to negotiate for the rental of, and otherwise made unavailable or denied, a dwelling to me, by refusing to not offer a shorter lease term (one-year) which would have approved me prior to finalizing the screening process.

55.     The excuses Overture and Greystar made for my denial are pretext and a coverup that occurred under circumstances giving rise to an inference of discrimination based on my race, color, and protected activity.

56.     Because of Overture and Greystar's discriminatory conduct, I have suffered injuries, including but not limited to, actual relocation costs. I am entitled to and seek actual damages, punitive damages, compensatory damages, reasonable attorneys' fees and costs, and other relief the Court deems equitable and just.

**CLAIM TWO**
**42 U.S.C. § 3604(b)**
**Disparate Impact under Federal Fair Housing Act ("FHA")**
**(Plaintiff Against collectively "Overture and Greystar")**

57.     I hereby incorporate all of the paragraphs of this Complaint as if stated, fully, herein.

58.     I am an "aggrieved person" as defined in 42 U.S.C. § 3602(i) and suffered injuries as a result of Overture and Greystar's unfair terms and conditions.

59.     I am a member of a racial minority. I am African American/Black citizen of the United States.

60.     Pursuant to 42 U.S.C. § 3604(b), the Federal Fair Housing Act ("FHA"), it shall be unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color...,

61.     The challenged policy or practice, as described above, has a disproportionately adverse effect on members of a protected class. The specific policy or practice of willfully altering an application by increasing the rent to a higher amount without the applicant's knowledge or consent, for the purpose of knowing if an applicant qualifies for "future lease renewals" is the direct cause of the discriminatory effect. The policy or procedure is not only unfair, but also a fraudulent act that causes the disparity.

62.     There are annual Cost of Living increases for most members in protected classes that Overture and Greystar did not factor into the challenged policy or practice. Making it "arbitrary, artificial and unnecessary to achieve a valid interest or legitimate objective."

63.     The challenged policy or practice has a disproportionately adverse effect on members of a protected class, (especially people of color), and the specific policy or practice is the direct cause of the discriminatory effect.

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

64.    The alleged disparity caused by the policy or practice is significant, and that there is a direct relation between the injury asserted and the injurious conduct alleged.

65.    As a result of Overture and Greystar's disparate impact, I suffered injuries, including but not limited to, a wrongful denial for an apartment home, extended hotel charges, out-of-state relocation costs, multiple moving costs from unstable, less favorable housing. I am entitled to, including but not limited to, actual damages, punitive damages, compensatory damages, attorneys' fees and costs, and other relief the Court deems equitable and just.

## CLAIM THREE
## 42 U.S.C. § 1981
## for Disparate Treatment
### (Plaintiff Against collectively "Overture and Greystar")

66.    I hereby incorporate all of the paragraphs of this Complaint as if stated, fully, herein.

67.    Pursuant to 42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts.

68.    I am a member of a racial minority. I am African American/Black citizen of the United States.

69.    The specific policy or practice of willfully altering an application by increasing the rent to a higher amount without the applicant's knowledge or consent, for the purpose of knowing if an applicant qualifies for "future lease renewals" is the direct cause of the disparate treatment. The policy or procedure was not only unfair, but also a fraudulent act that caused a disparate treatment on the basis of my race, color, and protected activity.

70.    Race played a motivating part in Overture and Greystar's decision to deny me, even though other factors as described herein, may also have motivated Overture.

71.    As a result of Overture and Greystar's disparate treatment, I suffered injuries, including but not limited to, compensatory damages, punitive damages, attorneys' fees and costs, and other relief the Court deems equitable and just.

## CLAIM FOUR
## C.R.S. § 6-1-105 Deceptive Trade Practices
### (Plaintiff Against All Defendants)

72.    I hereby incorporate all of the paragraphs of this Complaint as if stated, fully, herein.

73.    Overture, Greystar, Resident Verify, LLC, and Entrata, Inc., engaged in a deceptive or unfair trade practice in violation of the Colorado Consumer Protection Act (CCPA), C.R.S. § 6–1–101, Deceptive trade

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

practices, by making false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions.

74.    Overture and Greystar also engaged in a deceptive or unfair trade practice by fraudulently altering my rental application and increasing the rent to a higher amount without my knowledge or consent.

75.    The deceptive or unfair trade practice occurred in the course of Overture and Greystar's business.

76.    The deceptive or unfair trade practice significantly impacts the public as potential consumers [applicants] of the defendant's goods, services, or property. This practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual approved applicants.

77.    I suffered an injury in fact to a legally protected interest.

78.    As result of the deceptive or unfair business practices, I am entitled to receive actual damages, including but not limited to, all moving and relocation costs, including security deposits for obtaining other housing, and other relief the Court deems equitable and just.


### CLAIM FIVE
### Injunction
### under the Colorado Consumer Protection Act (CCPA), C.R.S. § 6-1-101.
### (Plaintiff Against ALL Defendants)

79.    I hereby incorporate all of the paragraphs of this Complaint as if stated, fully, herein. Plaintiff requests an Injunction for Violation of the Colorado Consumer Protection Act (CCPA), C.R.S. § 6-1-101.

80.    Overture and Greystar knowingly or recklessly engaged in false advertising of apartment home rental rates.

81.    Overture, Greystar, Resident Verify and Entrata knowingly or recklessly engaged in fraudulent acts by falsifying my rental application by increasing the rent to a higher amount than what was advertised and what I applied for, and this action was conducted without my knowledge or consent.

82.    Overture and Greystar knowingly or recklessly falsified and altered Resident Verify and Entrata tenant screening process by willfully entering inaccurate information to screen my application on a higher monthly rent, deliberately causing a wrongful denial. Resident Verify and Entrata knew or should have known the information on my rental application was incorrect because I told Resident Verify and they refused to correct the inaccuracy.

83.     Overture and Greystar, failed to disclose material information that apartment homes are screened on a higher market rent, than what is advertised on their website, which is a disparate impact on a particular class of people.

84.     Overture and Greystar knowingly or recklessly engaged in an unlawful transaction with Resident Verify and Entrata by obtaining private telephone recordings to use in a negative manner to discredit me.

85.     Overture, Greystar, Resident Verify, LLC, and Entrata, Inc. knowingly engaged in false, misleading, fraudulent act and practices, in which this conduct, policy or practice, effects a particular class of people, especially people of color.

Plaintiff prays for the following:

A.  That the Court find that Overture, Greystar, Resident Verify and Entrata have engaged in repeated and continual conduct subject to penalty under C.R.S. § 6-1-105 and that injunctive relief is appropriate under C.R.S. § 6–1–101 to prevent them from engaging in further such conduct;

B.  That the Court find that Overture, Greystar Resident Verify and Entrata engaged in conduct that substantially interferes with the public's judgement; and that injunctive relief against them is appropriate to prevent the recurrence of that conduct.

C. That the Court enter a permanent injunction permanently barring Overture and Greystar from posting and advertising rent they do not intend to screen the public (applicants) on;

D. That the Court enter a permanent injunction permanently barring Overture and Greystar from colluding with Resident Verify and Entrata in carrying out the tenant screening process with falsified and inaccurate applicant information.

E. That the Court enter a permanent injunction permanently barring Resident Verify and Entrata from colluding with Overture and Greystar in carrying out the tenant screening process when they have been notified by applicant of inaccurate property information listed by Overture.

F. That the Court enter a permanent injunction prohibiting Overture, Greystar, Resident Verify, Entrata, and their representatives, agents, servants, employees, attorneys, independent contractors, and those persons in active concert or participation with them, from directly or indirectly:

(1) engaging in any conduct subject to penalty under C.R.S. § 6–1–101;

(2) engaging in any conduct that interferes with its applicants and the public; and

G. That this Court order Overture, Greystar, Resident Verify, Entrata, to engage in post judgement discovery to ensure compliance with the permanent injunction.

H. That this Court grant Plaintiff such other relief, including attorney fees or costs, as is just and equitable.

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

## CLAIM SIX
## Negligence
## (Plaintiff Against ALL Defendants)

86.     I hereby incorporate all of the paragraphs of this Complaint as if stated, fully, herein.

87.     All Defendants conduct described above was extreme and outrageous.

88.     Defendants engaged in the creation of the risk and knew or should have known that their conduct as described above involving false advertising, alterations of pertinent documents, unlawfully releasing and obtaining confidential information to release to a third-party are all fraudulent acts.

89.     As described above, the conduct adversely affected me and made me feel extreme sadness, outraged at the conduct, and mental anguish.

90.     As a result of the negligence described above, I suffered, including but not limited to, actual damages, economic damages, punitive damages, and other relief the Court deems equitable and just.

## CLAIM SEVEN
## 15 U.S.C. § 1681s-2(B)
## (Plaintiff Against Resident Verify, LLC and Entrata, Inc.)

91.     I hereby incorporate all of the paragraphs of this Complaint as if stated, fully, herein.

92.     Pursuant to Section (2) of the Fair Credit Reporting Act: (2) Duty to correct and update information. A person who - (B)has furnished to a consumer reporting agency information that the person determines is not complete or accurate,..."

93.     During my telephone conversation with Resident Verify, the representative informed me about the higher rental amount that I was being screened for by Overture and Greystar. I disputed the amount saying it was higher than what I applied for on my application.

94.     I alerted Resident Verify that the information they were seeing pertaining to the rental amount on my tenant application was incorrect. I asked Resident Verify to correct it. I was told by the Representative it did not matter and the correction was not made.

95.     Resident Verify failed to undertake an investigation and follow reasonable procedures to dispute or correct the inaccuracy pertaining to tenant screening.

96.     As result of this inaccuracy, Resident Verify's tenant screening process was not truthful or dependable. I suffered injuries, including but not limited to, actual damages, compensatory damages, punitive damages, and other relief the Court deems equitable and just.

D. STATEMENT OF CLAIMS
CARMEN CRINER v. CRP-GREP OVERTURE 9CO OWNER, L.L.C., et al.

## CLAIM EIGHT
### [Negligent] Infliction of Emotional Distress
### (Plaintiff Against All Defendants)

97.     I hereby incorporate all of the paragraphs of this Complaint as if stated, fully, herein.

98.     As described above, Overture, Greystar, Resident Verify and Entrata acted intentionally or recklessly by fraudulently altering my rental application by increasing the rent to a higher amount, refusing to offer me or negotiate a shorter rental lease term which all caused a wrongful denial, illegally obtaining private telephone recordings from Resident Verify to use to discredit me, and discriminating against me based on my race, color, and protected activity.

99.     This conduct was extreme and outrageous.

100.    The conduct was the cause of my severe emotional distress, sadness and inflicted mental anguish.

101.    As a result of Overture, Greystar, Resident Verify and Entrata's intentional and reckless conduct, I suffered damages and injuries, including but not limited to, a wrongful apartment home denial, which caused me to relocate out of state...

102.    Resident Verify and Entrata acted intentionally or recklessly by unlawfully releasing my private telephone recordings and private affairs to a third-party without my knowledge or consent.

103.    This conduct was extreme and outrageous and was the cause of my severe emotional distress and inflicted mental anguish.

104.    As a result of the intentional infliction of emotional distress placed on me by All Defendants, as described above, I suffered, including but not limited to, actual damages, economic damages, punitive damages, and other relief the Court deems equitable and just.

Wherefore, Carmen Criner prays the Court award damages as described above and such other and further relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

I, Carmen M. Criner, demand trial by jury on all Claims stated in this Complaint.

Respectfully submitted,           ,          on this 1st day of November 2021.

s/ *Carmen Criner*

Carmen Criner, Pro Se Plaintiff
2355 Mercantile St., Apt. 1412, Castle Rock, CO 80109
Telephone: (720) 481-4566      Email: crinermarquita@gmail.com



**COLORADO**
Department of
Regulatory Agencies
Colorado Civil Rights Division

Sent via email.

September 27, 2021

Carmen Criner
P. O. Box 630232
Littleton, CO 80163
crinermarquita@gmail.com

RE:   Complaint No H2100012108x
      Carmen Criner v. Overture 9th + CO

Dear Carmen Criner:

This letter is to inform you that the Colorado Civil Rights Commission has reviewed your appeal. The Commission has determined that there is insufficient basis to warrant further action and has affirmed the director's decision of no probable cause.

If you wish to file a civil action in an appropriate United States District Court or State district court in this state, which action is based on the alleged discriminatory housing practice that was the subject of the charge filed with the Colorado Civil Rights Commission/Division and the Office of Fair Housing and Equal Opportunity, U.S. Department of Housing and Urban Development (HUD), you must do so:

   a. No later than two years after the occurrence or termination of the alleged discriminatory housing practice, whichever occurs last;
   b. The computation of this two year time period does not include any time during which an administrative proceeding was pending before HUD or the Colorado Civil Rights Commission/Division. Note that this does not mean that as the Complainant you have two years from the date of this notice. The computation of the two years also includes any time between the last discriminatory act and the date you as the Complainant filed a complaint with HUD and/or the Colorado Civil Rights Commission/Division.

If Complainant does not file an action within the time limits specified above, such action will be barred and no United States District Court or State District Court shall have jurisdiction to hear such action. [C.R.S. 24-34-306(2)(b)(I)(A),(B),(C); [24-34-505.6(1)(2) ]; and [42 U.S.C. 3613(a)(1)(A)(B)].

On behalf of the Commission,

*Aubrey E Elenis*

Aubrey L. Elenis, Esq.
Director

cc:  Karen Harvey, karen@thslawfirm.com



 Gmail                                      Carmen M. Criner <marqcriner1964@gmail.com>

---

## Fwd: Letter to Overture and Greystar Chairman
1 message

---

                                                                    Sat, Jun 27, 2020 at 9:45 AM

June 26, 2020

Overture 9th + CO
Attn: Jessica Douglass
4205 E 10th Ave
Denver, CO 80206

Dear Ms. Douglass,

On June 26, 2020, I applied to Overture 9th + CO, 55+ apartment community. I was immediately denied based on a credit score of 536. I was also denied based on the property market value rent of $2240.00. In actuality I applied for a unit that rented for $1481.00 as advertised by your community.

I've had several conversations with you and Emily over the course of several months dating back to March 2020. I was very interested in making your beautiful community my home. I shared my personal and private information with you concerning my ongoing Federal civil rights lawsuit, in which has just been resolved in my best interest. The lawsuit, along with this pandemic, placed me in a financial hardship. Since I just received my settlement check today, I was very excited to speak with you and Emily to submit my application.

You and Emily both explained to me for the past several months that if any negative reporting appeared on my credit report pertaining to the lawsuit, I would have the opportunity to submit documentation to Resident Verify showing good standing on my behalf.

However, Resident Verify informed me today, they do not accept any type of documentation for any reasons at all.

I called you and Emily several times today to see if there was anything I could do to clear up the adverse action so that I could be approved and move into my lovely new home on July 1, 2020, as you indicated.

My concerns are that I was mislead and wrongfully denied. There was a statement made to me by Emily regarding other residents being approved on a low credit score. You and Emily both lead me to believe that any negativity could be repaired if I had documentation to provide.

The statement Emily made to me during one of our telephone conversations was:

*"We have seen someone with a credit score of 500 being approved here."*

In addition, when I spoke to you today on the phone, you went on to tell me that your community "wants its residents to stay long term and make Overture their last stop in life." You stated to me, "this is a place where we want our 55+ residents to stay longer than a year." I expressed to you that I was looking for a 55+ smoke-free home in a beautiful community with mature residents like myself. Even when I applied online, I checked the box for leasing the apartment for 24 months. You were rude to me and you judged me. You spoke to me as if I do not belong as a resident. I have a very good rental history with past and present landlords, a reputation for being a respectful and good tenant who pays her rent on time, and no evictions. There is sufficient verifiable documentation regarding this past and present. You spoke to me in a condescending manner about Fair Housing laws. All I wanted to do was clear any adverse action against me so I would be approved. If you will remember, you and Emily both stated this was okay to do through Resident Verify. The attorney

who was assisting me throughout my Fair Housing civil rights lawsuit even reached out to you and Emily back in March 2020 informing you I was going to apply and I had the necessary documentation to provide. You should have informed me at that time your screening company does not accept any documentation for any reasons. I would not have wasted four months waiting to apply to your community. If this is your business practice it's unfair and unethical.

Do you think it was fair in how you and Emily treated me? Apparently, you did not disclose the correct information to me. Especially knowing that Resident Verify has a policy of not accepting documents regardless of pertaining to credit or to my lawsuit settlement. I did receive a copy of my credit report this evening from Resident Verify and there are discrepancies listed which caused this denial. As I stated to you and your screening company, documentation can be provided for any negative reporting and discrepancies to show I am cleared. However, your rules changed and what you and Emily expressed to me changed after I submitted my application. I never received the opportunity to provide the positive and verifiable documentation to your screening company showing the discrepancies should not be listed.

Your rental criteria and policies appear to be selective towards certain individuals who apply. The fair housing language that you directed at me should be directed towards you and your office.

I have attached a screenshot of a review that is listed on your website. I had a group of professionals read it and they all agree, although it's open for interpretation, it paints a picture of Overture 9th + CO, as being discriminatory. In addition, it has the meaning to dissuade the minority group from applying to your community. It appears your office is setting higher guidelines for people of color. It also appears your office condones the remark from this review of your property being "discriminating".

Please return my security deposit in the amount of $1000, as soon as possible to my post office box address listed below.


Sincerely,

Carmen M. Criner
P. O. Box 462543
Aurora, CO 80046

cc: Greystar
    Mr. Bob Faith
    Founder, Chairman and CEO
    465 Meeting Street, Ste 500
    Charleston, SC 29403

    Greystar
    Mr. Brandon Rich
    Senior Managing Director
    5445 DTC Parkway,
    Penthouse 1
    Greenwood Village, Colorado 80111

---

**3 attachments**



**Screenshot_2020-06-26-14-32-06~2.png**
140K

**Two Rental History Letters.pdf**
258K

**Gmail - Attention Jessica Douglass_ Carmen Criner.pdf**
84K